# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 10, 2012

## ROBERT LEE YATES v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Warren County**
**No. F-10328     Larry B. Stanley, Judge**

---

**No. M2011-00961-CCA-R3-PC - Filed November 2, 2012**

---

The petitioner, Robert Lee Yates, appeals the Warren County Circuit Court's denial of his petition for post-conviction relief. The petitioner was convicted by a jury of one count of aggravated robbery and sentenced to thirty years in the Department of Correction. On appeal, he contends he was denied his right to the effective assistance of counsel at trial and on appeal. Following review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Phillip T. Clemons, McMinnville, Tennessee (on appeal); Bud Sharp, McMinnville, Tennessee (on direct appeal); and Tracy Caten, McMinnville, Tennessee (at trial), for the appellant, Robert Lee Yates.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Lisa Zavogiannis, District Attorney General; and Mark A. Fulks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History and Factual Background

Although the specific facts of the underlying crime  were not necessary in the direct appeal of this case, we glean that the petitioner, armed with a weapon, robbed a convenience store clerk. *State v. Robert L. Yates*, No. M2006-02278-CCA-R3-CD (Tenn. Crim. App., at Nashville, June 6, 2008). On direct appeal, the petitioner challenged the denial of his motion to suppress and the admission of a photo identification. This court noted that "[t]he subject

of the motion to suppress was an incriminating statement made by the [petitioner] to police officers in which he acknowledged involvement in the crime." In the statement, the petitioner told officers that he had purchased methamphetamine from the store clerk and that the clerk said that $500 had been taken in the robbery. However, the petitioner "told the officers that 'there was a whole lot more than that taken, about $1500 and one ounce of meth.'" *Id*. The petitioner later denied he had told police that he was involved in the crime.

The petitioner was tried before a Warren County jury and found guilty of aggravated robbery. He was later sentenced to a term of thirty years in the Department of Correction. As noted, the petitioner filed a direct appeal to this court, but relief was denied. *Id*. No permission to appeal was filed with the Tennessee Supreme Court. Thereafter, the petitioner filed a timely petition for post-conviction relief asserting, among other numerous grounds, that he was denied the effective assistance of counsel at trial and on appeal. A motion for recusal of the post-conviction court was filed and denied, as was a motion for interlocutory appeal on the issue. Subsequently, a hearing was held on the post-conviction petition. At the hearing, multiple witnesses were called to testify.

The first witness called by the petitioner was Ervin Dixon, the transport officer who transported the petitioner from the Department of Correction back to the Warren County jail for his trial. He indicated that the petitioner was picked up around midnight for the transport. Although he recalled no specific details, he testified that, in the normal course of his duties, if a transportee is on medication at the Department of Correction, those medications are transported with a defendant.

The next witness called to testify was trial counsel. She testified that she was appointed to represent the petitioner and that this was the first case she had ever taken to trial. However, she made clear that she had handled numerous other cases for criminal defendants and had worked at the attorney general's office for thirteen months prior to accepting this case. Trial counsel stated that she met with the petitioner on several occasions, but that she was somewhat hampered in her efforts because the petitioner begged her not to have him transported to the Warren County Jail, where he claimed he had been raped. She also indicated that the petitioner did not make her job of preparing the case easy, because he admitted to her that he committed the crime, used the knife that was found to do so, and confessed his actions to the police.

Trial counsel testified that she received discovery, including a copy of the indictment, which she reviewed with the petitioner. She acknowledged that she did not visit the crime scene or interview the victim, but she added that she saw nothing to be gained from doing so as her statements were included in discovery. Trial counsel was unable to recall which witnesses she had interviewed, nor did she recall being told about a possible alibi witness.

Regardless, she would have been unable to utilize an alibi witness, as the petitioner told her he had committed the crime. She did recall that the petitioner gave her a list, which was several pages thick, filled with names and phone numbers. However, he did not inform her what these alleged witnesses would testify to, and she chose not to go on a "goose chase" by randomly interviewing them.

With regard to the alleged weapon used in the case, the defendant acknowledged to her that the knife found was the weapon he had used to commit the crime. As such, she did not believe it proper to cross-examine witnesses with regard to its discovery because she felt there was nothing to be gained by it. She also testified that she saw no need to file a motion for change of venue, despite the fact that the petitioner had been before the trial court multiple times on various other charges.

Trial counsel testified that she was aware that the petitioner had been in a mental health facility on a prior occasion, but she did not discuss it with him. She did request, and was granted, a psychological evaluation. After the examination, the petitioner was found competent to stand trial. She further recalled that the petitioner told the examiner that he knew what he was doing, but he just liked to get out of jail for the testing. Trial counsel related that, on the day of trial, the petitioner was more focused and alert than she had previously seen him.

Trial counsel also discussed her decision not to cross-examine certain witnesses on various things. For instance, she did extensively question the victim on her initial statement that the perpetrator was Mexican. However, she strategically chose not to cross-examine the officers who testified about the composition of the lineup. Moreover, she also chose not to cross-examine the victim with regard to certain issues, such as how the petitioner actually took possession of the money, as she was extremely hard to understand. Additionally, she felt there was nothing to be gained by it, as the petitioner himself had informed the officers that he committed the crime. Trial counsel did acknowledge that she should have moved for a judgment of acquittal, but she basically felt she had no good faith reason to do so.

Trial counsel noted that the evidence against the petitioner was overwhelming. She acknowledged that she called no defense witnesses, but she reaffirmed that there was simply no viable defense available based upon the evidence. The petitioner was aware of his right to testify, but she felt ethically unable to call him as a witness, as he had confessed his guilt to her. She further did not want to call the petitioner as a witness, because the State did file notice of intent to use his prior multiple convictions for impeachment purposes. However, the petitioner was aware that the final decision was his.

Trial counsel concluded her testimony by noting that the petitioner had been offered

a "very generous deal" from the State. He was offered a twelve-year sentence in a lower range than the range which he qualified for. However, the petitioner refused the offer. Trial counsel testified that she believed that she did her best for the petitioner, but it was her belief that no attorney could have won the case based upon the evidence.

The next witness called to testify was appellate counsel. He indicated that following his appointment for appeal purposes, he spoke with the petitioner on multiple occasions regarding what to include in the appeal. Appellate counsel indicated that the petitioner wanted several issues raised, some of which did not relate to the actual trial. The petitioner was informed that those issues would not be raised. Appellate counsel raised the two issues which he felt had some merit, but he subsequently received this court's denial of the appeal.

At that point, appellate counsel called the petitioner and informed him of the denial, and a discussion was had regarding whether to appeal to the Tennessee Supreme Court. Appellate counsel informed the petitioner of the pros and cons of doing do, and the petitioner told appellate counsel that "I'm going to do an appeal to the Supreme Court." Appellate counsel testified that he took that to mean that the petitioner himself was going to perfect the application to appeal, so he did not file an application. However, he also did not file the requisite paperwork removing himself from the case.

After the deadline for filing had passed, appellate counsel received a call from the petitioner asking the status of the Rule 11 application. Because of the misunderstanding, appellate counsel immediately called the Board of Professional Responsibility and informed them of the situation. He was instructed to write down what had occurred and send a letter to the Board. Additionally, appellate counsel filed a motion to late file the Rule 11 application in which he explained the misunderstanding between himself and the petitioner. The Tennessee Supreme Court denied the motion. When asked about the merits and facts of the petitioner's case, appellate counsel indicated that he saw nothing outstanding which would have caused the supreme court to have accepted a timely-filed application.

The final witness to testify was the petitioner himself, who gave a recitation of the errors he believed that counsel had committed. The petitioner adamantly denied that he had ever admitted any guilt to either the police or to trial counsel. He complained that trial counsel failed to interview certain witnesses, including an alleged alibi witnesses and various State witnesses. He further faulted trial counsel for failing to meet with him to discuss the case. The petitioner stated that trial counsel had lied about meeting him at the jail, stating the only meetings between them occurred prior to court dates. He also accused witnesses at trial of lying and basically challenged the evidence used to convict him.

The petitioner acknowledged that he had been evaluated for competency, but he

complained of the result of the examination. He stated that the result found him competent only so long as he was on his medication. The petitioner then testified that he was deprived of those medications when he was transported back to the county jail for trial.

With regard to appellate counsel, the petitioner testified that he had a letter written by appellate counsel which indicated that counsel was going to file a Rule 11 application to appeal. The petitioner stated that he never indicated to appellate counsel that he was going to personally file the application.

After hearing the evidence presented, the post-conviction court denied relief. The petitioner has timely appealed that decision, and the matter is properly before this court.

## Analysis

On appeal, the petitioner contends that the post-conviction court erred in denying his petition for relief. First, he contends that the record establishes that he received ineffective assistance of counsel at trial. Further, he asserts that his petition should have been granted based upon appellate counsel's failure to file a Rule 11 application for permission to appeal to the Tennessee Supreme Court.

In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and Article I, Section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687-88 (1984). Failure to satisfy either prong results in the denial of

relief. *Id.* at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 687-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

**I. Trial Counsel**

The petitioner denotes a myriad of errors allegedly committed by trial counsel, which he asserts amount to deficient performance on her part and, further, that those errors affected the outcome of his trial. Basically, these alleged errors fall in the categories of failure to investigate, failure to interview witnesses, and failure to prepare a viable defense. Specifically, he contends that trial counsel: (1) failed to visit the crime scene; (2) failed to interview State witnesses, including police officers and the victim; (3) failed to challenge a suggestive photo lineup identification either in a motion to suppress or with effective cross-examination of witnesses; (4) failed to file a motion to suppress the knife found at the scene; and (5) failed to interview possible defense witnesses, including an alleged alibi witness.

In denying relief, the post-conviction court stated:

> What I've heard today is a lot of testimony by [the petitioner] and by [trial counsel] and by [appellate counsel], especially by [the petitioner], that a lot of different things could have been done, should have been done that would have made a difference. The problem is I don't have anything concrete to show that there is any eye witness that was an alibi or . . . somebody there that would have said, no, it wasn't me. I've heard none of that. I've heard [the petitioner's] allegations about that. But quite frankly, even though [trial counsel] might not have had the most experience of any attorney, she had criminal cases before and I quite frankly, I don't find it reasonable, having seen her practice and [heard] her testimony today to think that if you told her that there was an alibi witness and that you didn't do it, to contact this witness, that that would have been the first thing she did. I don't think [trial counsel] is lying to me about what [the petitioner] told her and her interactions with [him].
>
> I remember enough about the trial to remember that [the petitioner] was not - - didn't appear to be in any way incompetent at the time of the trial or unable to assist or was off his medications or anything like that and [trial counsel], quite frankly, confirms what I thought I saw in that [the petitioner] was focused and was able to help and select jury members and a jury panel and so forth.

After review of the record, we conclude that the petitioner has failed to put forth any evidence which preponderates against the post-conviction court's findings. Our review reveals that the petitioner's arguments are in large part based upon his own version of the events which occurred. For instance, his assertions that trial counsel failed to meet with him,

that he did not confess to police or trial counsel, that he informed trial counsel that he had an alibi, and that he never told trial counsel that the knife in evidence was the knife that he used. The post-conviction court, based upon its findings, clearly did not accredit this testimony from the petitioner. Rather, the court specifically noted that it believed the version presented trial counsel. As has been noted on multiple occasions, it is not the province of this court to reweigh or re-evaluate credibility determinations made by the finder of fact. *See State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

Trial counsel specifically testified that the petitioner told her he had committed the crime and that she recalled no possible alibi ever mentioned. She stated that she met with the petitioner on multiple occasions, reviewed discovery with him, and generally discussed the case with him, including the plea offer from the State. Trial counsel chose not to interview certain State witnesses because she felt there was nothing to be gained from doing so, as she had reviewed discovery and discussed with the district attorney general what the witnesses would testify to. She testified that her decisions not to address certain issues on cross-examination were tactically motivated. *See Adkins*, 911 S.W.2d at 347 ( A "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding.") Trial counsel fully acknowledged that she was unable to present much of a defense for the petitioner; however, that was based not upon her deficient performance, but rather upon the extensive evidence against the petitioner, as well as his confession to her of guilt. On these facts, we cannot conclude that the post-conviction court erred.

Moreover, the petitioner also fails to establish his claims of failing to discover and interview witnesses based upon a failure to establish prejudice. The petitioner did not present testimony from any of the alleged witnesses at the post-conviction hearing. Thus, he presented no evidence, other than bare allegations, as to what trial counsel could have discovered or done differently. It is well-established that in order to establish the prejudice prong of ineffective assistance of counsel in these type of claims, the petitioner is required to produce witnesses at the post-conviction hearing who present favorable and material testimony. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (when a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing in order to show prejudice). The petitioner has failed to establish his allegations by clear and convincing evidence as required by Tennessee Code Annotated section 40-30-110(f). Accordingly, relief was properly denied upon this ground.

**II. Appellate Counsel**

Next, the petitioner challenges the effectiveness of appellate counsel based upon his failure to file a Rule 11 application with the Tennessee Supreme Court following the denial of the direct appeal by this court. The petitioner contends that this lack of action by appellate counsel was deficient and that he suffered prejudice because he was put "at a disadvantage in that he was not given even the slightest opportunity to get his issues before the Tennessee Supreme Court nor was he afforded the notice required by the rules so he could prepare a pro-se appeal." The petitioner addresses this under the context of ineffective assistance of counsel and asserts he is entitled to a new trial.

The petitioner is correct in that Tennessee Rules of Appellate Procedure 11 sets forth the requirements for appealing a ruling from the Court of Criminal Appeals to the Tennessee Supreme Court. That court, exercising its own discretion, may grant or deny permission to hear the appeal; review is not automatic. A party is allowed sixty days from the date of the entry of the judgment in the Court of Criminal Appeals to file the application. There is no dispute that this did not occur in this case. Nor did appellate counsel give the petitioner written notice that he intended to withdraw in accordance with Sup. Ct. R. 14.

At this juncture we again note that the petitioner raised this issue in the context of ineffective assistance of counsel and sought a new trial, rather than a delayed appeal. The post-conviction court addressed the issue in the context it was raised and found that appellate counsel was in fact deficient. The court noted that it "should have been more clear with [appellate counsel] about who was going to file the application to the Supreme Court. Once you're in, you're in as the attorney and [you] probably should have done that, I'll grant you that." However, the court found that no prejudice resulted from the error, stating

> I don't think that would have made any difference. I don't think they would have taken the case and if they . . . [did], I can't imagine anything - - them overturning the Court of Criminal Appeals because, quite frankly, I agree with [trial counsel], it was a pretty damning case to the [petitioner] based on the statements that he had made and the eye witness testimony. It wasn't good.
>
> . . . .
>
> [W]hile [appellate counsel] should have filed a notice to the Supreme Court for permission to appeal, I don't think that would have changed the outcome of the case. I don't think there is anything that I've seen here today that would have changed their mind.

Nothing in the record preponderates against this finding. Trial counsel testified that as soon as he became aware of the error, he notified the Board of Professional Responsibility.

Moreover, he, of his own volition, filed for permission to late file the Rule 11 application with the supreme court. The court chose to deny that request. Trial counsel testified that, in his opinion, there was nothing outstanding in the petitioner's case which would have merited the Tennessee Supreme Court's acceptance of the application, much less a reversal on any issue. Thus, as noted by the post-conviction court, the outcome of the proceeding would not "more probably than not" have been different had the error not occurred. Thus, no relief is warranted.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE